## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **ZIPIT WIRELESS, INC.,** | Civ. No. 20-01494 (KM) (JBC) |
| **Plaintiff,** | |
| **v.** | **OPINION** |
| **LG ELECTRONICS U.S.A., INC.** | |
| **Defendants.** | |

**KEVIN MCNULTY, U.S.D.J.:**

This matter comes before the Court on the motion (DE 24) of Defendant LG Electronics U.S.A., Inc. ("LG") to dismiss the First Amended Complaint (DE 15) pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff Zipit Wireless, Inc. ("Zipit") asserts claims under federal law for direct patent infringement, indirect patent infringement, and willful patent infringement under 35 U.S.C. § 271 *et seq.*

For the reasons stated herein, LG's motion to dismiss is **GRANTED** in part and **DENIED** in part.

### I.      Summary[1]

The facts alleged in the Amended Complaint are accepted as true for purposes of this motion. Zipit, a company organized and existing under the laws of Delaware, is in the business of selling "Wi-Fi based instant messaging"

---

[1]      Citations to the record will be abbreviated as follows. Citations to page numbers refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise indicated:

         "DE" = Docket entry number in this case.

         "Compl." = Zipit's initial Complaint (DE 1)

         "Am. Compl." = Zipit's First Amended Complaint (DE 15)

devices." (Am. Compl. ¶¶ 2,19.) Zipit is the owner of U.S. Patent Nos. 7,292,870 ("the '870 Patent"), entitled "Instant Messaging Terminal Adapted For WI-FI Access Points" (Am. Compl. ¶ 31, Ex. A), and 7,849,837 ("the '837 Patent"), entitled "Instant Messaging Terminal Adapted For Wireless Communication Access Points" (together, "Asserted Patents"). (Am. Compl. ¶ 66, Exs. H, X.)

LG is a company organized and existing under the laws of Delaware and "is in the business of supplying instant messaging devices, such as smartphones in the United States." (Am. Compl. ¶¶ 3,6.) LG's principal place of business is at 910 Sylvan Avenue, Englewood Cliffs, New Jersey, 07632. (Am. Compl. ¶3.)

On February 12, 2020, Zipit filed the initial Complaint against LG asserting patent infringement of the Asserted Patents. (*See generally* Compl.) The initial Complaint asserted that claims 20, 21, and 24-30 of the '870 Patent and claims 11, 12, 14-16, and 20 of the '837 Patent were infringed by LG. (Compl. ¶¶ 114, 134.)

Prior to the filing of the initial Complaint, on August 30, 2019, LG filed petitions with the Patent Trial and Appeal Board ("PTAB") for *inter partes* review ("IPR") of claims 20, 21, and 24-30 of the '870 Patent and claims 11, 12, 14-16, and 20 of the '837 Patent. (*See* Am. Compl. ¶¶ 42-44.) Pursuant to a joint stipulation between the parties, on May 14, 2020, the Court stayed the initial action pending the completion of the PTAB's IPR of the those claims. (DE 7.) On March 19, 2021, the PTAB issued two Final Written Decisions determining that that the challenged claims were unpatentable. (Am. Compl. ¶¶ 42-44, 77-79.)

During the pendency of the IPRs, on July 10, 2020, Zipit filed a request for *ex parte* reexamination of the '837 Patent (Am. Compl. ¶ 80), which the United States Patent and Trademark Office ("PTO") granted. (DE 24 Ex. 3 at 18-37.) Subsequently, Zipit amended original claim 1 of the '837 Patent and presented new claims 21-50. (Am. Compl. ¶ 80.) On November 23, 2020, the PTO issued the *Ex Parte* Reexamination Certificate and concluded that the new and amended claims were patentable. (Am. Compl. Ex. X.)

On July 23, 2021, Zipit filed the Amended Complaint against LG. The Amended Complaint alleges that LG infringes claims 22, 23, and 36 of the '870 Patent and claims 1, 2, 13, 19, 21-35, and 39-50 of the '837 Patent. (Am. Compl. ¶¶ 127, 146.) Claims 22, 33, and 36 of the '870 Patent and claims 13 and 19 of the '837 Patent are method claims ("the Method Claims"); claims 1, 2, 21-35, and 39-50 of the '837 Patent are apparatus claims ("the Apparatus Claims").[2]

The Amended Complaint asserts two counts of patent infringement.

Count I alleges infringement of the '870 Patent by LG's instant messaging devices ("the Accused Devices"). (Am. Compl. ¶¶ 126-144.) The Amended Complaint alleges that LG "has in the past and continues to infringe one or more claims of the '870 Patent, including claims 22, 23, and 36 in violation of 35 U.S.C. §§ 271 (a), (b), and (c)." (Am. Compl. ¶ 128.)

Count II alleges infringement of the '837 Patent by the Accused Devices. (Am. Compl. ¶¶ 145-163.) The Amended Complaint alleges that LG "has in the past and continues to infringe one or more claims of the '837 Patent, including claims 1, 2, 13, 19, 21-35, and 39-50 in violation of 35 U.S.C. §§ 271 (a), (b), and (c)." (Am. Compl. ¶ 147.)

For both Counts I and II, the Amended Complaint alleges that LG's "infringing acts include, but are not necessarily limited to, Defendant's manufacture, use, offering for sale, sale, and importation of Wi-Fi-enabled instant messaging devices and methods, ... that generate an instant message that includes an emoji/graphical symbol, ... using an instant messaging application that was preloaded onto Defendant's Wi-Fi enabled smartphone by Defendant, ... and/or using a third party instant messaging application that has been downloaded onto one of the Defendant's Wi-Fi enabled smartphones, as instructed." (Am. Compl. ¶¶ 128, 147.) Further, for both counts, Zipit alleges that the infringement "has been, and continues to be, objectively

---

[2]    The claims now asserted by Zipit were not challenged in the previously mentioned IPRs.

reckless, willful and deliberate, entitling Zipit to increased damages pursuant to 35 U.S.C § 284." (Am. Compl. ¶ 161.)

Zipit seeks damages and costs, as well as declaratory and injunctive relief.

## II.    Discussion

### a.  Legal standard

Generally, district courts adjudicating patent cases apply the substantive law of the Federal Circuit where the matter "is intimately involved with the substance of patent laws." *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1345 (Fed. Cir. 2012) (internal quotations omitted). The standard governing grant or denial of a Rule 12(b)(6) motion, however, "is a purely procedural question not pertaining to patent law," to which this court, and the Federal Circuit on review, applies the rule of the regional circuit. *C&F Packing Co. v. IBP, Inc.*, 224 F.3d 1296, 1306 (Fed. Cir. 2000); *see also Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1259 (Fed. Cir. 2018) ("We review procedural issues, including the grant of a motion to dismiss, according to the law of the respective regional circuit.") In *Robern, Inc. v. Glasscrafters, Inc.*, this Court held that the *Iqbal*/*Twombly* pleading standard applies in all civil cases and, since "the abrogation of Rule 84 and Form 18, there is no longer any credible conflict between Supreme Court precedent and Form 18." *Id.*[3]

Those standards are familiar and well-established. Federal Rule of Civil Procedure 8(a) does not require that a complaint detailed factual allegations. However, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Philips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief." (citation omitted)). Therefore, the complaint's factual

---

[3]    The references are to former Federal Rule of Civil Procedure 84 (abrogated eff. Dec. 1, 2015) and patent pleading Form 18.

allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013).

Facial plausibility is found "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a probability requirement ... it ask for more than a sheer possibility." *Id.* (internal quotations omitted).

Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Defendants, as the moving party, bear the burden of demonstrating that no claim has been stated. *Animal Sci. Prods., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n. 9 (3d Cir. 2011). On a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

When deciding a motion to dismiss, a court typically does not consider matters outside the pleadings. A court, however, may consider documents that are "integral to or explicitly relied upon in the complaint" or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document[.]" *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) (emphasis and citations omitted); *see In re Asbestos Prods. Liab. Litig. ( No. VI)*, 822 F.3d 125, 133 n. 7 (3d Cir. 2016); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). Therefore, courts may consider matters of public record and exhibits attached to the complaint. *Schmidt*, 770 F.3d at 249 ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record"); *Arcand v.*

*Brother Int'l Corp.*, 673 F. Supp. 2d 282, 292 (D.N.J. 2009) (court may consider documents referenced in complaint that are essential to plaintiff's claim).

Reliance on such documents does not convert a motion to dismiss into a motion for summary judgment. "When a complaint relies on a document ... the plaintiff obviously is on notice of the contents the document, and the need for a chance to refute evidence is greatly diminished." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993). Accordingly, I may consider exhibits such as the cited patents and papers and pleadings filed with the PTAB and PTO, which are attached to and are the very foundation of the complaint.

### b. Direct Patent Infringement (Method Claims)

Claims for direct patent infringement are governed by 35 U.S.C. § 271(a), which provides as follows: "Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefore, infringes the patent." 35 U.S.C. § 271(a). For a method claim, direct infringement requires a party "to perform each and every step or element of a claimed method." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1320 (Fed. Cir. 2009).

According to LG, Zipit has not adequately pled a claim for direct infringement because the Amended Complaint does not allege that (1) "LG performs each step of the claimed methods" or (2) that any third-party "performance is attributable to LG." (DE 24 at 11 (citing *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921-22 (2014) ("*Limelight I*").) Further, LG argues that Zipit cannot base its claim on LG offering or selling a device because "[m]ethod claims are only infringed when the claimed process is performed, [a]nd not by the sale of an apparatus" capable of infringement. (DE 24 at 12 (citing *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006); *see also Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993).)

In response, Zipit relies on this Court's opinion in *NovaPlast Corp. v. Inplant, LLC*, No. CV207396KMJBC, 2021 WL 389386, at *7 (D.N.J. Feb. 3, 2021), in which I held that a complaint would sufficiently plead direct infringement "where (1) it named the accused product; (2) in each count, it 'describe[d] the alleged infringement"; and (3) identifie[d] how [the accused] product infringe[d] on every element of at least one claim in each of [the plaintiff's] patents." (DE 27 at 7; *see also Nasdaq, Inc. v. IEX Grp., Inc.*, 2019 WL 102408, at *9 (D.N.J. Jan. 4, 2019); *Batkinoff v. Church & Dwight Co., Inc.*, 2020 WL 1527957, at *8 (D.N.J. Mar. 31, 2020).) Accordingly, Zipit claims that the Amended Complaint complies with *NovaPlast* because it: (1) provides both "a general definition of the infringing devices and methods" and "a nine-page list of specific representative infringing devices by model/name number"; and (2) describes the alleged direct infringement, attaching several representative infringement claim charts stating Zipit's theory of method claim infringement against LG. DE 27 at 7-15.[4]

With respect to both the '870 Patent (method claims 22, 23, and 36) and the '837 Patent (method claims 13 and 19), I find that Zipit has failed to sufficiently allege direct infringement. While the Amended Complaint's allegations—including the attached infringement claim charts—may plausibly set forth that LG's devices are *capable* of infringing the claimed methods, Zipit has not sufficiently alleged that *LG performs every step* of the claimed methods. My analysis of the direct infringement claim with respect to each patent follows.

---

[4]     Exhibit Y to the Amended Complaint is a representative infringement claim chart as to '870 Patent and Exhibits Z and AA are representative infringement claim charts as to the '837 Patent. Zipit highlights that LG in its briefing did not argue that the provided infringement claim charts were not "representative examples of the accused devices/methods [that] meet every element of the at-issue claims." DE 27 at 15.

### 1. '870 Patent

#### i. *Claim 22*

Claim 22, the method of claim 21,[5] recites that "associating at least one programmable key with a set of characters corresponding to a graphical symbol supported by an instant messaging service provider." (Am Compl. Ex. A. at 31.) Within the representative claim chart for claim 22, Zipit alleges that a particular device, "[t]he LG G5[,] associates at least one programmable key with a set of characters corresponding to a graphical symbol supported by an instant messaging service provider."

It is important to keep in mind that this is a method claim. While the claim chart plausibly alleges that the LG's device is capable of performing the claimed method, it fails to allege that LG (or an LG employee), as opposed to an end user, operates the device to perform the method of associating at least one programming key "with a set of characters corresponding to a graphical symbol supported by an instant messaging service provider." (Am Compl. Ex. A. at 31.) Zipit's failure to allege that LG performs every step of the claimed method is fatal to its direct infringement claim. *See Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1366 (Fed. Cir. 2012) ("[D]irect infringement of a method claim requires a showing that every step of the claimed method has been practiced."); *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1222 (Fed. Cir. 2014) ("[N]one of our decisions have found direct infringement of a method claim by sales of an end user product which performs the entire method, and we decline to do so here. Because Ericsson cannot point to any evidence in the record that [Defendant] performed the infringing steps, … the jury did not have substantial evidence to find *direct* infringement) (emphasis in original); *Sentius Int'l, LLC v. Apple Inc.*, No. 4:20-CV-00477-YGR, 2020 WL 2850286, at *4 (N.D.

---

[5] Claim 21, the method of claim 20, recites: "identifying a key on the data entry device with a graphical symbol that is generated by depressing the key." Am. Compl. Ex. A at 31. After LG filed a Petition for *Inter Partes* Review of the '870 Patent, the PTAB concluded that claims 20 and 21 (along with claims 24-30) of the '870 Patent were unpatentable. *See* Am. Compl. ¶ 44.

Cal. June 2, 2020) ("[I]f the end user controls the equipment (or the user) that performs any claimed step, it may be liable for direct infringement, but if the end user controls the device that performs the entire method, no direct infringement can be found").

> ii.    *Claim 23*

Claim 23, the method of claim 22, recites as follows:

> generating in accordance with an instant messaging service protocol being used to communicate with a buddy, a character sequence to represent the graphical symbol supported by the instant messaging service provider in response to the depression of the programmable key.

(Am. Compl. Ex. A at 31.) The claim 23 infringement chart claims that "[t]he LG G5 generates in accordance with an instant messaging service protocol being used to communicate with a buddy a character sequence to represent the graphical symbol supported by the instant messaging service provider in response to the depression of the programmable key." (Am. Compl. Ex. Y at 18.)

Again, we have a method claim. What Zipit does not allege is that LG operated the device to perform every step of the claimed method, such as (1) communicating with "a buddy" using an instant messaging protocol; or (2) depressing the programmable key used to generate a character sequence to represent a graphical symbol. *Cf. Sentius Int'l,* 2020 WL 2850286, at *4 ("Devices do not use a method for purposes of patent infringement—people do. Accordingly, the use of a method by a device creates liability for the party that controls the device[.]").

Accordingly, Zipit has failed to plead direct infringement as to claim 23 of the '870 Patent.

*iii.   Claim 36*

Claim 36, the method of claim 20,[6] recites: "generating sound from a downloaded file while communicating messages with a wireless, Internet protocol access point using the handheld instant messaging terminal." (Am. Compl. Ex. Y at 31.)

According to Zipit, LG has directly infringed claim 36 because the "LG G5 smartphone generates sound from a downloaded file while communicating messages with a wireless, Internet protocol access point using the handheld instant messaging terminal." (Am. Compl. Ex. Y at 19.) Allegedly, Zipit also contends that "a user can receive a link in an instant message allowing the user to download and play an audio file," which ultimately generates sound. (Am. Compl. Ex. Y at 19.)

---

[6]     Claim 20 is "[a] method for managing wireless network access and instant messaging through a wireless access point with a handheld instant messaging terminal comprising:

> entering textual characters and graphical symbols on a display of the handheld terminal;

> displaying the entered textual characters and graphical symbols on a display of the handheld terminal;

> communicating instant messages with a wireless, Internet protocol access point, the instant messages being communicated with a communications module and wireless transceiver in the handheld terminal;

> coordinating authentication for coupling the handheld instant messaging terminal to a local network through the wireless, Internet protocol access point;

> implementing instant messaging and sessions protocols to control a conversation session through the wireless, Internet Protocol access point, the instant messaging and session protocols being implemented within the handheld instant messaging terminals;

> displaying conversation histories for active conversations terminated by a loss of a network connection; and

> automatically searching for a wireless, Internet protocol network beacons after the conversation histories are displayed.

Am. Compl. Ex. A at 30-31.

Neither the representative infringement chart nor the Amended Complaint itself alleges that LG operates the device to perform the method steps of (1) downloading a file or (2) using a handheld instant messaging terminal to communicate messages with a wireless, Internet protocol access point, and that deficit is fatal to Zipit's direct infringement claim. Therefore, I find that Zipit has failed to sufficiently allege direct infringement as to claim 36 of the '870 Patent.

### 2. '837 Patent

#### i. Claim 13

Claim 13 of the '837 Patent, the method of claim 12,[7] recites:

> generating in accordance with the [sic] at least one instant messaging protocol being used to control a conversation session, a character sequence that represents the graphical symbol.

(Am. Compl. Ex. H at 30.) Zipit asserts that the LG G7 infringes claim 13 because (1) the RCS component determines the compatible character sequence for graphical symbols that are compatible with at least one instant messaging service and (2) the "LG G7 smartphone generates this character sequence." (Am. Compl. Ex. AA at 8.)

Again, Zipit fails to allege that LG, as opposed to the end user, is responsible for operating the device to perform the method of generating the character sequence that represents the graphical symbol. This conclusion is supported by the Amended Complaint, which alleges that: (1) LG "*instructs customers and potential customers* … how to send an instant message comprising an emoji / graphical symbol … over Wi-Fi using one of Defendant's smartphones" (Am. Compl. ¶ 150 (emphasis added).)

Consequently, Zipit has failed to state a claim for direct infringement as to claim 13 of the '837 Patent.

---

[7]  Claim 12 of the '837 Patent claims the method of "correlating a key on the data entry with a graphical symbol in response to the key on the data entry device being depressed." Am. Compl. Ex. H at 30.

### ii. Claim 19

Claim 19, the method of claim 11, recites:

> parsing textual characters and graphical symbols generated with the data entry device; and

> confirming the entered characters are compatible with the instant messaging service associated with the buddy to whom the message is being sent.

(Am. Compl. Ex. H at 30.) Zipit alleges that an "LG G7 smartphone running the Messages app parses the textual and graphical symbols and assembles a message, which it then forwards to the Carrier Services App." (Am. Compl. Ex. AA at 8-9.) Subsequently, "[t]he Carrier Services app routes the message to the instant messaging service associated with the contact to whom the message is being sent." (Am. Compl. Ex. AA at 9.)

Absent from the Amended Complaint (or representative infringement claim chart) is any allegation that LG itself (1) "enter[s] the characters" on the device or (2) sends "the message" to a buddy receiving it on an instant messaging service. *See 10x Genomics, Inc. v. Celsee, Inc.*, No. CV 19-862-CFC-SRF, 2019 WL 5595666, at *11 (D. Del. Oct. 30, 2019), *report and recommendation adopted*, No. CV 19-862-CFC/SRF, 2019 WL 6037558 (D. Del. Nov. 14, 2019) (quoting *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1320 (Fed. Cir. 2009). For this reason, Zipit's direct infringement claim as to claim 19 of the '837 Patent must be dismissed.

### c. Induced and Contributory Infringement (Method Claims)

Because the Amended Complaint fails to state a claim for direct infringement as to the Method Claims, Zipit's induced and contributory infringement claims also fail. *See In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Kajeet, Inc. v. Gryphon Online Safety, Inc.*, No. CV 19-2370 (MN), 2021 WL 780737, at *9 (D. Del. Mar. 1, 2021) ("As to induced or contributory infringement, a prerequisite to stating a claim of indirect infringement is that Plaintiff plausibly allege the requisite underlying act of direct infringement has occurred.")

### d. Direct Patent Infringement (Apparatus Claims)

Zipit also brings direct infringement claims based on the Apparatus Claims of the '837 Patent.

In its motion to dismiss, LG notes that on November 23, 2020, Zipit was issued a reexamination certificate for the '837 Patent, which substantively amended claim 1 (which claim 2 depends on) and added claims 21-50. (DE 24 at 6-7, 16-17.)[8] Therefore, as to the Apparatus Claims, LG asserts that it has absolute intervening rights "to import, use, or sell any [allegedly infringing] devices in existence" predating the issuance of the reexamination certificate, because these reexamined claims are not identical to Zipit's original claims. (DE 24 at 16-17.) LG argues that Zipit only supports its infringement allegations as to three devices released *before* the November 23, 2020 reexamination certificate (LG G5, G6, and G7), and has not sufficiently alleged infringing activity *after* that reexamination date (DE 24 at 17). It follows, says LG, that the Apparatus Claims must be dismissed.

The Court will first address the potential applicability of the absolute intervening rights defense, and then address the merits of the remaining infringement claims.

### 1. Intervening Rights Defense

"The doctrine of intervening rights first developed as courts recognized that permitting substantive changes to the scope of patent claims through post-issuance procedures left the door [ ] open for gross injustice where a third party, having already begun to make, use, or sell a given article, finds its previously lawful activities rendered newly infringing under a modified patent." *Marine Polymer Technologies, Inc. v. HemCon, Inc.*, 672 F.3d 1350, 1361-62 (Fed. Cir. 2012); *see also LMT Mercer Grp., Inc. v. Maine Ornamental, LLC*, No. CIV. 10-4615, 2014 WL 284238, at *9 (D.N.J. Jan. 24, 2014). This defense

---

[8]     Zipit only asserts claims of patent infringement with respect to claims 21-35 and 39-50 of the '837 Patent.

originally applied only to reissued patents, but has subsequently been extended to reexamined patents under 35 U.S.C. § 307(b), providing:

> Any proposed amended or new claim determined to be patentable and incorporated into a patent following a reexamination proceeding will have the same effect as that specified in section 252 of this title for reissued patents on the right of any person who made,[9] purchased, or used within the United States, or imported into the United States, anything patented by such proposed amended or new claim, or who made substantial preparation for the same, prior to the issuance of a certificate under the provisions of subsection (a) of this section.

(35 U.S.C. § 307(b).)

Accordingly, only "amended" or new" claims in a reexamined patent give rise to the intervening rights defense. *Id.*; *see also Marine Polymer*, 672 F.3d at 1363. Federal patent law provides for two types of intervening rights: (1) "absolute intervening rights," which sever liability for an infringer for accused products that were made or used *before the reexamination certificate issued*; and (2) "equitable intervening rights," where a court, in its equitable discretion, may allow a party to continue to engage in infringing activities—*e.g.*, to continue to make or use products—after the reexamination certification has issued if the accused infringer made substantial preparations for the infringing activities prior to the reexamination. *See* 35 U.S.C. §§ 252, 307; *MonoSol Rx, LLC v. Biodelivery Scis. Int'l, Inc.*, No. CIV. 10-5695 FLW/DEA, 2015 WL

---

[9]   35 U.S.C. § 252 provides, in part, that:

> A reissued patent *shall not abridge or affect the right of any person* or that person's successors in business *who, prior to the grant of a reissue*, made, purchased, offered to sell, or used within the United States, or imported into the United States, anything patented by the reissued patent, to continue the use of, to offer to sell, or to sell to others to be used, offered for sale, or sold, the specific thing so made, purchased, offered for sale, used, or imported unless the making, using, offering for sale, or selling of such thing infringes a valid claim of the reissued patent which was in the original patent.

35 U.S.C. § 252 (emphasis added).

14

5679891, at *9 (D.N.J. Sept. 25, 2015) (citing *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1339 (Fed. Cir. 2013)).

If the court concludes that the claim upon which the intervening rights are premised is new or has been amended, *see Marine Polymer Technologies, Inc.*, 672 F.3d at 1361-62, the court then determines whether the accused product infringes on a claim that remains "without substantive change" after the reexamination. *Seattle Box Co. v. Indus. Crating & Packing, Inc.*, 731 F.2d 818, 827–28 (Fed.Cir.1984); *Bloom Eng'g Co. v. N. Am. Mfg. Co.*, 129 F.3d 1247, 1250 (Fed.Cir.1997) ("Unless a claim granted or confirmed upon reexamination is identical to an original claim, the patent cannot be enforced against infringing activity that occurred before issuance of the reexamination certificate.").

LG asserts only the absolute intervening rights doctrine, not the equitable version.[10] The parties do not appear to dispute that LG's intervening rights defense is based on new claims (21-35 and 39-50) and amended claims (1 and dependent claim 2). Thus, I must determine whether the claims were amended without substantive change. If so, the absolute intervening rights defense would not apply.

"To determine whether a claim change is substantive it is necessary to analyze the claims of the original and the reexamined patents in light of the particular facts, including the prior art, the prosecution history, other claims, and any other pertinent information." *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1347 (Fed. Cir. 1998) (internal quotation marks omitted). The Court focuses on whether the amended claims are of a "different scope" than the original claims. *Laitram Corp.*, 163 F.3d at 1348.

---

[10]    DE 28 at 17 n. 8 ("LG does not seek relief on the basis of equitable intervening rights in this motion.") LG states, however, that to the extent this Court does not dismiss any of the Apparatus Claims, "equitable intervening rights may significantly diminish or eliminate any remaining claim given the substantial preparations made for the accused functionality prior to November 23, 2020." *Id.*

LG contends that Zipit has made substantive changes during the '837 Patent reexamination which resulted in an additional limitation to claim 1, along with thirty new claims. (DE 24 at 19.) Regarding amended claim 1, LG states that Zipit added an additional limitation requiring that "the control module be[ ] further configured to determine a character sequence corresponding to one of the graphical symbols in the generated IM messages that are compatible with the at least one instant messaging service." (Am. Compl. Ex. X ('837 Patent Rexxamination Certificate); *see also* DE 24 at 19.) Moreover, LG highlights that the patent examiner cited the additional limitation as a basis for patentability stating:

> [N]one of [the prior art that raised the substantial new question of patentability] describe or suggest, alone or in combination, a handheld terminal having a control module ... where 'the control module being further configured to determine a character sequence that corresponds to one of the graphical symbols in the generated IM messages that are compatible with the at least one instant messaging service' as now recited in amended claim 1."

(DE 24 at 20, Ex. 4 at 5 (Dinh Decl.)).[11]

Zipit does not challenge LG's assertion that the limitation added to claim 1 constituted a substantive change, or that the asserted Apparatus Claims are not identical to the original '837 Patent claims. I also agree that the amendments to the '873 Patent were substantive changes that narrowed the scope of original claim 1, and that it is not plausible to infer otherwise.

It follows that LG is entitled to assert the defense of absolute intervening rights. Should LG ultimately be found to have infringed the Apparatus Claims, damages will be limited to infringement occurring after the issuance of the reexamination certificate of the '837 Patent on November 23, 2020.

---

[11]     Even at the motion to dismiss stage, I may take judicial notice of the Reexamination Certificate and the Notice of Intent to Issue *Ex Parte* Reexamination Certificate. *See* Fed. R. Evid. 201; *Schmidt*, 770 F.3d at 249; *see also Waters Techs. Corp. v. Aurora SFC Sys. Inc.*, No. CV 11-708-RGA, 2017 WL 3598648, at *3 (D. Del. Aug. 21, 2017) ("Because I take judicial notice of the *inter partes* reexamination certification, consideration of this [intervening rights] defense is appropriate.")

### 2. Merits

To prove direct infringement, Zipit "must either point to specific instances of direct infringement or show that the [accused device] necessarily infringes the patent in suit." *Acco Brands, Inc. v. ABA Locks Mfrs. Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007). Accordingly, Zipit must identify LG's products which allegedly infringe the Apparatus Claims, describe the alleged infringement, and "relate factual assertions to the pertinent claims" of the '837 Patent. *Robern*, 206 F. Supp. 3d at 1011.

LG contends that the absolute intervening rights doctrine cuts off Zipit's claims, because Zipit has failed to sufficiently allege that LG engaged in infringing activity after November 23, 2020. (DE 30 at 21.) LG also submits that Zipit has provided attached representative infringement claim charts only for three of the devices (G5, G6, and G7), and that for "roughly two hundred devices" (the "Non-Charted Devices"), "Zipit has made no attempt to map any of the Non-Charted Devices" to the elements of the Apparatus Claims. (DE 30 at 21.) Zipit opposes dismissal of infringement claims on these asserted grounds, for three reasons.

First, Zipit states that three of LG's allegedly infringing devices (W41/+ Pro, LG W31/+, and the LG K92 5G) were released *after* the November 23, 2020 issue date for the '837 Patent Reexamination Certificate, and that, at least as to those devices, the absolute intervening rights defense does not cut off its claims. (DE 27 at 28-29.) Second, Zipit argues that the Amended Complaint alleges that LG's devices, even if they infringed before the cutoff date, *continued* to infringe the Apparatus Claims thereafter. (DE 27 at 30-31.) Third, Zipit asserts that the provided claim charts are not exclusive but merely representative, non-limiting examples of LG's infringement of the '837 Patent; LG, it says, has been provided fair notice of Zipit's infringement contentions. (DE 27 at 31-34.)

As an initial matter, the Court agrees that, at the pleading stage, the law does not require Zipit to include on a claim chart each of the over 200

devices.[12] It would be premature to require Zipit to plead the same level of detail "as it will disclose in its asserted claims and infringement contentions pursuant to the local rules"; nevertheless, Zipit's allegations must meet the plausibility standard established by *Iqbal*/*Twombly*. *Robern*, 206 F. Supp. 3d at 1011 (D.N.J. 2016). Therefore, Zipit must at least plead facts sufficient to support the inference that the remainder of the Accused Devices share the infringing qualities of the exemplar devices cited in the representative claim chart. *Cf. Pulse Elecs., Inc. v. U.D. Elec. Corp.*, No. 318CV00373BENMSB, 2021 WL 981123, at *19 (S.D. Cal. Mar. 16, 2021) ("[A] patent holder may carry its burden of proof by showing that (1) a representative example infringes and (2) every accused model conforms to that representative example.") (citation omitted); *Sung v. Shinhan Diamond Am., Inc.*, No. CV 14-530-MWF(EX), 2015 WL 12681308, at *4 (C.D. Cal. Feb. 25, 2015) ("[T]he Court concludes that Plaintiffs have not provided an adequate explanation of why the claim charts are representative of all of the accused products."); *Network Prot. Scis., LLC v. Fortinet, Inc.*, No. C 12-01106 WHA, 2013 WL 5402089, at *3 (N.D. Cal. Sept.

---

[12]     With respect to the Apparatus Claims, attached to the Amended Complaint are claim charts for the LG G5 (Exhibit Z) and G7 (Exhibit AA) devices. Am. Compl. ¶146 Ex. Z, AA. The Court, however, will only analyze the LG G7 representative claims chart for purposes of this analysis.

     The G5 claim chart consists of (1) the claim language for Claim 1 and Claim 2 of the *original* '837 Patent and (2) factual allegations describing the G5's alleged infringement of the respective claim elements. (Am Compl. Ex. Z.) By contrast, the G7 claim chart consists of (1) the claim language of *amended* claim 1, along with claims 21-35 and 39-50 of the post-reexamination '837 Patent (there is no chart for claim 2) and (2) factual allegations describing the G7's alleged infringement of the respective claim elements. Am. Compl. Ex. AA.

     Because (1) LG is entitled to the absolute intervening rights defense as to the '837 Patent and (2) Zipit "is entitled to infringement damages only for the period following the issuance of the reexamination certificate," *Laitram Corp.*, 163 F.3d at 1346 (emphasis added), the Court only determines "whether any conceivable process would infringe *the amended claim,* [and] not the original claim." *Predicate Logic, Inc. v. Distributive Software, Inc.*, 544 F.3d 1298, 1303 (Fed. Cir. 2008) (emphasis added). Therefore, to the extent Zipit argues that the representative claim charts place LG on fair notice of its infringement claims, it can only rely on the G7 claim chart which is mapped to the amended '837 Patent claim language.

26, 2013) ("[W]hen supported by adequate analysis showing that the accused products share the same critical characteristics, representative infringement contentions may suffice.")

Zipit has satisfied that initial pleading burden. The Amended Complaint generally alleges that the listed devices are designed to (1) use an Android operating system; (2) run a pre-loaded and/or downloaded instant messaging application; (3) send and receive instant messages; and/or (4) use the RCS protocol. (Am. Compl. ¶ 113.) Zipit also asserts that the referenced instant messaging applications—such as "Hangouts," "Messages," and/or RCS-enabled applications—allow LG's devices "to send instant messages comprising an emoji/graphical symbol … over Wi-Fi." (Am. Compl. ¶ 117.) Finally, Zipit contends that LG's devices "include keyboards and keys that bear an emoji / graphical symbol … that is generated by pressing the key." (Am. Compl. ¶ 122.)

Read together, these allegations sufficiently set forth that the accused devices function in essentially the same way for purposes of Zipit's infringement allegations. Indeed, requiring detailed pleading regarding each device might err in the other direction, running afoul of the Rule 8(a)(2) requirement of a "a short and plain statement of the claim." Zipit's use of representative infringement charts is appropriate at this stage.[13]

---

[13]  *See, e.g., Neutrik AG v. ADJ Prod., LLC*, No. LACV1909937JAKAGRX, 2020 WL 6128066, at *2 (C.D. Cal. May 6, 2020) ("Although the Complaint does not include images or claim charts for every Named Accused Product, it still provides Defendants with adequate notice as to the Named Accused Products. Requiring a pleading to provide over 50 claim charts with limitation-by-limitation analysis is impractical."); *Mobile Telecomms. Techs., LLC v. Sprint Nextel Corp.*, No. 2:12-CV-832-JRG-RSP, 2014 WL 12609359, at *2 (E.D. Tex. Apr. 25, 2014) (holding that the "Court's Patent Rules" did not "require a separate infringement chart for each accused device—especially where … there [was] not dispute that many of the devices function virtually identically to each other with regard to the accused functionality."); *ASUS Computer Int'l v. Round Rock Rsch., LLC,* No. 12-CV-02099-JST, 2013 WL 5545276, at *3 (N.D. Cal. Oct. 8, 2013) ("Courts have previously held that the representative method of disclosing infringement contentions is appropriate, provided the infringement contentions provide reasonable notice of the patent owner's theories of infringement); *Network Prot. Scis., LLC v. Fortinet, Inc.*, No. C 12-01106 WHA, 2013 WL 5402089, at *3 (N.D. Cal. Sept. 26, 2013) ("[W]hen supported by adequate analysis showing that the accused

More generally, I find that the chart, in the context of the allegations of the complaint, sets forth an adequate statement of the claim of direct infringement as to the Apparatus Claims. The representative claim chart (1) includes the '837 Patent claim language and (2) provides factual allegations which map to the various claim elements. Consequently, the chart gives LG fair notice of each of Zipit's claims and the grounds upon which it rests, and provides "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Nasdaq, Inc. v. IEX Grp., Inc.*, No. CV 18-3014-BRM-DEA, 2019 WL 102408, at *9 (D.N.J. Jan. 4, 2019) (citations omitted).

LG's motion to dismiss Zipit's direct infringement claims is therefore denied.[14]

### e. Contributory Infringement (Apparatus Claims)

I turn to the claims of contributory infringement with respect to the Apparatus Claims. Claims for contributory infringement are governed by 35 U.S.C. § 271(c), which states as follows:

> Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

35 U.S.C. § 271(c).

To state a claim for contributory infringement, Zipit is required to plead facts showing that: (1) LG knew that the Accused Devices were material to

---

products share the same critical characteristics, representative infringement contentions may suffice.")

[14]    That is, to the extent any infringement occurred after November 23, 2020, the reexamination date. *See* section II.d.1, *supra*.

practicing the invention and have no substantial non-infringing uses; (2) LG knew that the Accused Devices were especially made or especially adapted to infringe the Asserted Patents; and (3) a third party used the accused products to directly infringe the product. *Straight Path IP Grp., Inc. v. Vonage Holdings Corp.*, No. CIV.A. 14-502 JLL, 2014 WL 1266623, at *3 (D.N.J. Mar. 26, 2014) (citing *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1303 (Fed. Cir. 2006).

The Amended Complaint alleges that LG's "accused products constitute (i) a component and material part of the inventions claimed in one or more claims of the '837 Patent, (ii) knowingly and especially designed for use in infringing one or more claims of the '837 Patent, (iii) intended to be used to infringe one or more claims of the '837 Patent, and (iv) not a staple item of commerce suitable for substantial non infringing use." (Am. Compl. ¶ 156.)

Zipit's conclusory allegations that merely parrot the claim elements are insufficient to support a contributory infringement claim. For example, Zipit has failed to include any facts in the Amended Complaint which support the inference that LG's accused devices are not suitable for substantial non-infringing use. Moreover, with respect to the '837 Patent, Zipit has not included any allegations bearing on whether LG had knowledge that the Accused Devices infringed on the Apparatus Claims after November 23, 2020—the date the PTAB issued the '837 Patent reexamination certification which deemed amended claim 1 and new claims 21-50 to be patentable.

Consequently, Zipit's contributory infringement claims are dismissed.

### III.   Conclusion

For the reasons set forth above, LG's motion to dismiss is **GRANTED** in part and **DENIED** in part. Count 1 (claims 22, 23, and 36 of the '870 Patent) is dismissed in its entirety. Count 2 is dismissed as to (1) the direct, induced, and contributory infringement causes of action concerning the Method Claims in the '837 Patent (claims 13 and 19), (2) the contributory infringement cause of action concerning the Apparatus Claims in the '837 Patent (claims 1-2 and 21-

50), and (3) to the extent any alleged infringement occurred before November 23, 2020. The motion to dismiss will be denied with respect to all other claims.

Because the Amended Complaint is not merely a second attempt to plead the preexisting causes of action, and because some of the defects identified above may concern adequacy of pleading, further amendment would not necessarily be futile. This dismissal is therefore entered without prejudice to the filing, within 60 days, of a properly supported motion to file a Second Amended Complaint.

An appropriate order follows.

Dated: January 18, 2022

/s/ Kevin McNulty

_____

**Kevin McNulty**
**United States District Judge**